# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

ERNEST MONDRAGON and
JEREMY MONDRAGON,

      Plaintiffs,

v.                                No. CIV-02-617 WJ/KBM

ANTHONY TRUJILLO, et al.,

      Defendants.

## MEMORANDUM OPINION AND ORDER ON
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
## AND PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

THIS MATTER comes before the Court pursuant to Defendants' Motion for Summary Judgment [Docket No. 68], Defendants' Motion to Strike Exhibits [Docket No. 77] and Plaintiffs' Motion for Partial Summary Judgment [Docket No. 65].

**BACKGROUND**

On the night of October 20, 2000, Plaintiff Ernest Mondragon (Ernest) was driving a pickup truck northbound on a highway just north of Taos, New Mexico. Plaintiff Jeremy Mondragon (Jeremy) was a passenger in the pickup truck. Traveling behind Ernest's pickup truck was another pickup truck driven by Thomas Thorton who is not a party to this action. Traveling behind Mr. Thorton was a New Mexico State Police vehicle driven by Defendant Anthony Trujillo. Officer Trujillo was stationed at the Taos Office of the New Mexico State Police.

Ernest intended to make a right-hand turn into a road leading to his daughter's home, but missed the turn. He traveled approximately three quarters of a mile past the road to a point where

there was a pull-out and an historic marker on the opposite side of the road.  He intended to turn left into the pull-out so that he could turn around and return to the road he had missed.  Before attempting the left turn into the pull-out, Ernest checked his rearview mirror and saw Mr. Thorton's truck.  He did not see the police vehicle.  He also checked the oncoming lane and saw no oncoming traffic.  He slowed his pickup and turned on his left turn signal.  He then began executing a left turn into the pull-out on the opposite side of the road.

   As Trujillo approached Mr. Thorton's truck from behind, he saw Mr. Thorton's brake lights and noticed Mr. Thorton's vehicle slowing.  Trujillo decided to pass Mr. Thorton.  Trujillo did not see Ernest's truck in front of Mr. Thorton's truck.  Trujillo checked that there was no oncoming traffic, that he was in a passing zone, and that there was nobody attempting to pass him from behind.  He then pulled into the oncoming lane to pass Mr. Thorton.  Trujillo then saw Ernest's pickup in front of Mr. Thorton's pickup with the left turn signal activated.  Ernest turned left in front of Trujillo.  Trujillo braked and swerved right, but the police vehicle struck the rear of Ernest's pickup.

   Ernest saw Mr. Thorton's pickup, which was directly behind him, swerve to the right.  Ernest realized right away that he had been hit, but did not see the vehicle that had hit him.  He saw a large cloud of dust and saw that other vehicles had stopped.  He saw Mr. Thorton get out of his pickup to check on the other vehicle involved in the collision.  He did not see that the other vehicle was a police vehicle.  Ernest left the scene of the accident and drove the three quarters of a mile to the road to his daughter's home with the intention of calling the police.

   Back at the scene of the accident, Trujillo had turned on the emergency lights of his police vehicle.  Mr. Thorton approached Trujillo's vehicle to see if Trujillo was okay.  He told Trujillo

that the other vehicle had left the scene. Trujillo asked Mr. Thorton to try and locate the other vehicle. When Ernest arrived at the road to his daughter's home, his daughter was parked at the entrance of the road. Ernest and Jeremy got out of Ernest's pickup and inspected the damage to the truck. Ernest's daughter pointed out the emergency lights flashing at the scene of the accident and noted that police were already at the scene. Mr. Thorton arrived at the entrance to the road and told Ernest that the vehicle that had hit him was a police vehicle. Ernest returned to the scene. He approached the police vehicle and noted that Trujillo was bleeding and had injuries to his face.

Two additional police vehicles and more than two additional police officers arrived at the accident scene. Officer Donovan Mascarenas of the New Mexico State Police was one of the officers who arrived and investigated the accident. Like Officer Trujillo, Mascarenas was stationed at the Taos Office of the New Mexico State Police. Mascarenas spoke with Ernest and Jeremy and asked each of them questions about the accident. Mascarenas spoke with and questioned Mr. Thorton and Trujillo. Mascarenas examined the skid marks and the damage to each vehicle. He measured 417 feet of skid marks from Trujillo's vehicle.[1]

Ernest told Mascarenas that he had left the scene of the accident. Mascarenas gave Ernest citations for making an improper left turn and for leaving the scene of the accident. Ernest then left the scene with Jeremy in his own vehicle. Ernest was not placed under arrest for the events surrounding the accident.

---

[1] Plaintiff offers the police report and diagram prepared by Officer Mascarenas as support for this fact. The report and diagram make no direct or explicit reference to the 417 feet. However, the diagram and report give sufficient information from which the length of the skid marks may be ascertained through simple math. Additionally, Defendants do not dispute this fact.

At a bench trial in Magistrate Court, Ernest was found guilty of the traffic citations arising out of the accident. Ernest appealed the Magistrate Court ruling to the District Court for a *de novo* trial. The District Court dismissed the charges against Ernest because the District Attorney failed to appear at a hearing.

Ernest Mondragon has no personal knowledge of or experience in police procedures for accident investigations. Moreover, he has no knowledge of or experience in the hiring and supervision practices of the New Mexico State Police.

Plaintiffs' First Amended Complaint seeks damages under federal and state law. Plaintiff does not seek any injunctive relief. The First Amended Complaint contains five counts. The first count is a claim by Ernest for initiation and pursuit of prosecution without probable cause under 42 U.S.C. § 1983. The count states that the prosecution without probable cause violated his right under the Fourteenth Amendment to be secure. The count states that Defendants Trujillo and Mondragon violated this right by causing the criminal charges to issue against Ernest without probable cause and with an improper, illegal and unconstitutional purpose. The first count further states that the violation was caused by the "Defendant New Mexico State Police's Custom and Policies and\or their failure to adequately train and supervise Defendant Trujillo and or to adequately train and supervise him." See First Amended Complaint ¶ 31.

The second count of the First Amended Complaint is a claim by Ernest for conspiracy to violate his constitutional rights under 42 U.S.C. § 1983. The count states that the Defendants conspired to deprive him of his rights secured to him under the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States to be free to access the courts, to equal protection, to due process, and to be free from arbitrary and unreasonable action. The count

4

alleges that Defendants Mascarenas and Trujillo conspired to deprive him of these rights by intentionally fabricating and contriving the criminal charges against Ernest, by submitting false police reports, statements and testimony to corroborate the charges, by conspiring to intimidate and terrorize Ernest, and by conspiring to punish Ernest for having exercised constitutionally protected rights to speak freely, choose not to speak, and pursue legal remedies in court.  The count further alleges that the deprivations were caused by New Mexico State Police policies and customs and by their failure to adequately train and supervise Defendant Trujillo.

The third and fourth counts of the First Amended Complaint are claims by Ernest under state law for negligent hiring, supervision and training by the Defendant John Does.  The third count is for negligent hiring, supervision and training of Defendant Trujillo alleging that "Defendant New Mexico State Police" were aware or should have been aware that Defendant Trujillo was a negligent driver such that the conduct of Trujillo toward Ernest was likely to occur. The fourth count is for negligent hiring, supervision and training of Defendant Mascarenas alleging that Defendant John Does had a policy or custom which encouraged officers to protect fellow officers who had committed crimes or engaged in conduct that exposed the New Mexico State Police to liability.

The fifth count is a claim under state law by Jeremy for personal injuries.  This count alleges that Jeremy was injured as a result of Defendant Trujillo's negligence.  In addition to the five counts in the complaint, Plaintiffs' First Amended Complaint seeks punitive damages against all Defendants.

Defendant Mascarenas filed a counterclaim against Ernest and Jeremy Mondragon under state tort law for malicious abuse of process.

**LEGAL STANDARD**

Summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing that there is an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met this burden, the nonmoving party must come forward with identification of specific facts which show the existence of a genuine issue of material fact. Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). The evidence submitted at the summary judgment stage need not be in a form that would be admissible at trial, but the content or substance of the evidence must be admissible. Thomas v. Int'l Business Machines, 48 F.3d 478 (10th Cir. 1995). Alleging the mere existence of some disputed evidence will not defeat a properly supported motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Plaintiff cannot rely on conclusory allegations as the basis for defeating a motion for summary judgment. White v. York Int'l Corp., 45 F.3d 357, 363 (10th Cir. 1995).

**DISCUSSION**

I.   DEFENDANTS' MOTION TO STRIKE

Rule 56 of the Federal Rules of Civil Procedure provides that a court must consider "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any ..." See Fed. R. Civ. P. 56(c). Only admissible evidence may be considered by a court when ruling on a motion for summary judgment. See World of Sleep, Inc. v. La-Z-Boy Chair Co., 756 F.2d 1467, 1474 (10th Cir.1985). To be admissible, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the

affiant must be a person through whom the exhibits could be admitted into evidence. See Ortiz v. Wingard, 173 F.Supp.2d 1155, 1163 (D.N.M. 2001) (citing IBP, Inc. v. Mercantile Bank of Topeka, 6 F.Supp.2d 1258, 1263 (D. Kan.1998) and 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, §Federal Practice and Procedure  2722 at 384 (3d ed.1998)).  Any affidavits submitted under Rule 56(e) must be based on personal knowledge, set forth such facts as would be admissible in evidence, and affirmatively show that the affiant is competent to testify as to the subject matter.  See Fed. R. Civ. P. 56(e).  Materials that do not measure up to the standards of Rule 56 are subject to a motion to strike.  See Noblett v. General Elec. Credit Corp., 400 F.2d 442, 445 (10th Cir.1968).

Plaintiff's exhibits 1 through 7, 9 and 11 have not been authenticated by nor attached to affidavits.  Under Rule 56, reports and records which have not been authenticated or are not attested are not admissible on summary judgment.  See Ortiz, 173 F.Supp.2d at 1163 (citing Rill v. Trautman, 950 F.Supp. 268, 269 (E.D.Mo.1996)).  Although such deficiencies are subject to waiver, the Defendants have timely objected to these exhibits.  See Id. (citing Michigan State Podiatry Ass'n v. Blue Cross & Blue Shield of Michigan, 681 F.Supp. 1239, 1243 (E.D.Mich.1987)).  Because they do not comply with the requirements of Rule 56, and the Defendants have raised timely objections, Defendant's Motion to Strike will be granted and Plaintiff's Exhibits 1 through 7, 9 and 11 will not be considered by the Court in the summary judgment determination.

II.     DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

     A.     Plaintiffs' Claims Under 42 U.S.C. § 1983 Against Defendants Acting in their Official Capacities

Defendants argue that Plaintiffs' claims against the Defendants in their official capacities under Section 1983 are barred by the 11th Amendment to the Constitution of the United States because Plaintiffs seek only money damages. In Plaintiffs' Response, they agree that Defendants should be dismissed for actions in their official capacities. Thus, Plaintiffs' claims against the Defendants in their official capacities will be dismissed.

> B. <u>Plaintiffs' Claims Under 42 U.S.C. § 1983 Against Defendants Acting in their Individual Capacities</u>
>
>> 1. <u>Plaintiffs' Claims Alleging Violations of Due Process Under the Fifth and Fourteenth Amendments</u>

Defendants urge that Plaintiffs' claims for prosecution without probable cause are cognizable only under the Fourth Amendment standards and are not cognizable under Fifth and Fourteenth Amendment substantive due process. Plaintiffs' Response agrees that a right to be free from prosecution without probable cause is a Fourth Amendment right and not a Fifth or Fourteenth Amendment due process right. Thus, Plaintiffs' claims in Counts I and II will be dismissed to the extent they allege due process violations under the Fifth and Fourteenth Amendments.

>> 2. <u>Plaintiffs' Claims Alleging Prosecution Without Probable Cause and Conspiracy to Violate the Fourth Amendment</u>

Defendants contend that they are entitled to qualified immunity because Plaintiff cannot show the violation of a constitutional right. They assert that a plaintiff alleging prosecution without probable cause under 42 U.S.C. § 1983 must establish a violation of the Fourth Amendment right to be free from unreasonable seizure. They proceed to argue that Plaintiff

8

Ernest Mondragon cannot establish a Fourth Amendment violation because he was never seized. Alternatively, they argue that Plaintiff cannot establish a Fourth Amendment violation because Defendant Mascarenas had probable cause, as a matter of law, to issue the traffic citations that are the basis of Plaintiffs' claims for prosecution without probable cause.

In Albright v. Oliver, the Supreme Court held that an arrest without probable cause did not constitute a violation of the arrestee's substantive due process rights and such a claim should be analyzed under the Fourth Amendment. 510 U.S. 266, 274 (1994) (plurality opinion). The Court reasoned that generalized notions of substantive due process could not be the guide for analyzing claims when a particular provision of the Bill of Rights provides an explicit textual source of constitutional protection against a particular type of governmental behavior. Id. at 273.

In Lopez v. United States, United States District Judge Bruce Black addressed the very argument made by Defendants here. 129 F.Supp.2d 1284, 1296 (D.N.M. 2000). Based on the reasoning of Albright, Judge Black found it conceivable that a malicious prosecution could deprive a person of constitutional rights other than those protected under the Fourth Amendment. Id. at 1296. He did not read Albright as foreclosing analysis of malicious prosecution claims under provisions of the Bill of Rights other than the Fourth Amendment. Rather, Albright merely requires that a claim be analyzed as a violation of a specific right when a specific right is implicated. See Albright, 510 U.S. at 273. Thus, a malicious prosecution or abuse of process claim is not foreclosed by the fact that no seizure of the claimant's person occurred. Lopez, 129 F.Supp.2d at 1297.

I agree with Judge Black's reasoning and find that a claim under 42 U.S.C. § 1983 for prosecution without probable cause is not foreclosed simply because there is no seizure of

9

Plaintiff's person.  The problem in this case is that Plaintiff Ernest Mondragon has conceded that his claim for prosecution without probable cause should be analyzed under the Fourth Amendment while at the same time arguing that a seizure is not required.  It is clear that a claim under the Fourth Amendment requires an unreasonable search or seizure; the right to be free from unreasonable search and seizure is the right protected under the Fourth Amendment.  See U.S. Const. amend IV.

The Court might overlook Plaintiff's concession to Fourth Amendment analysis in light of his contradictory argument that a seizure is not required if there was any evidence to support the argument that any other constitutional right was implicated.  In Count I, Plaintiff Ernest Mondragon alleges that Defendants Trujillo and Mascarenas pursued criminal charged against him in retaliation for his exercise of constitutionally protected rights.  See First Amended Complaint ¶ 29A.  However, Plaintiff does not specify the right or rights he was exercising for which Trujillo and Mascarenas retaliated against him.  Count I also states that Defendant Trujillo and Mascarenas violated Plaintiff Ernest Mondragon's right to be secure under the Fourteenth Amendment.  See First Amended Complaint ¶ 30. This might be an allegation of a Fourth Amendment violation because the Fourth Amendment is the only provision of the Bill of Rights that refers to a right to be secure.[2]  It might also be an attempt to allege a substantive due process violation under the Fourteenth Amendment although the Fourteenth Amendment does not refer to

---

[2]"The right of every person to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . ."  U.S. Const. amend IV.

any right to be secure.[3]  As already noted, Plaintiff's claim fails under the Fourth Amendment because there was no seizure of Ernest Mondragon's person.  Plaintiff has conceded that he has no claim for a violation of substantive due process under either the Fifth or Fourteenth Amendment.  Even if the Court ignored Plaintiff's acknowledgment that he does not have a substantive due process claim, Plaintiff has not alleged or shown conduct by Trujillo or Mascarenas that is so egregious that it shocks the conscience of the Court.  See Torres v. Superintendent of the Police of Puerto Rico, 893 F.2d 404, 409-10 (1st Cir. 1990) abrogated on other grounds by Albright v. Oliver, 510 U.S. 266, 274 (1994) (plurality opinion).

In Count II, Plaintiff Ernest Mondragon alleges that Defendants Trujillo and Mascarenas conspired to retaliate against Plaintiff for his exercise of free speech and his right to access the courts.  Plaintiffs' Response argues that Defendants Mascarenas' and Trujillo's actions were committed with the purpose of making Ernest Mondragon responsible for the collision thus preventing him from accessing the courts to pursue his claims for damages.

The government may not prosecute a person in order to discourage protected speech. Wolford v. Lasater, 78 F.3d 484, 488 (10th Cir. 1996).  A plaintiff alleging that a government prosecution was motivated by a desire to discourage protected speech has the burden of establishing that the substantial or motivating factor in the prosecution was retaliation.  Id.  The ultimate inquiry in such an action is whether there is a realistic or reasonable likelihood of prosecutorial conduct that would not have occurred but for the hostility or punitive animus toward the claimant.  Gehl Group v. Koby, 63 F.3d 1528, 1534 (10th Cir. 1995) overruled on

---

[3]No State shall "deprive any person of life, liberty, or property, without due process of law . . ." U.S. Const. amend XIV § 1.

different grounds by Patel v. Wooten, 15 Fed.Appx. 647 (10th Cir.2001).

Plaintiff has not alleged or shown any exercise of speech or even intended exercise of speech for which there could have been retaliation or an attempt to chill. Nor has Plaintiff shown or even alleged that his access to the courts was denied. The fact that Plaintiff is before this Court on this claim is evidence that his access to the courts is unhindered. Thus, Plaintiff's claim for prosecution without probable cause cannot be analyzed under First Amendment for violation of the right to free speech or the violation of the right to access the courts.

While the starting point of any malicious prosecution claim under 42 U.S.C. § 1983 is the common law elements of a malicious prosecution claim, the ultimate question is whether a plaintiff has proven a violation of a constitutional right. Taylor v. Meacham, 82 F.3d 1556, 1560 (10th Cir. 1996). Plaintiff Ernest Mondragon has failed to show that there is any disputed issue of material fact with regard to a violation of any constitutional right. Therefore, Defendants are entitled to judgment on Plaintiff's claim in Count I for prosecution without probable cause because there is no underlying constitutional violation.

    C.    Plaintiffs' Claim Under 42 U.S.C. § 1983 for Conspiracy

Defendants argue that they are entitled to qualified immunity for Plaintiffs' claim in Count II for conspiracy under 42 U.S.C. § 1983 because there is no underlying constitutional violation. Additionally, they argue that this claim must fail because Plaintiffs can offer no evidence of a conspiracy, and the evidence that they have attempted to offer to create an inference of conspiracy is insufficient as a matter of law.

Allegations of conspiracy may form the basis of a 42 U.S.C. § 1983 claim. Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 533 (10th Cir. 1998). However, a plaintiff must allege and

prove specific facts showing an agreement and concerted action amongst the defendants. Id. Conclusory allegations of conspiracy are insufficient to state a valid Section 1983 claim. Id. In addition to proving an agreement, a plaintiff is also required to prove an actual deprivation of a right secured by the Constitution and laws of the United States. Dixon v. City of Lawton, Okla., 898 F.2d 1443, 1449 (10th Cir. 1990).

In Tonkovich, a plaintiff alleged that law school faculty members conspired to violate his constitutional rights. 159 F.3d at 533. The plaintiff specifically alleged that faculty members met with administrators during an investigation into wrongdoing by the plaintiff. The Tenth Circuit found that the plaintiff had not carried his burden of alleging facts sufficient to support a claim of conspiracy. Id.

Plaintiffs here allege that Defendants Trujillo and Mascarenas agreed and acted in concert to fabricate and contrive the charges against Ernest Mondragon. To show agreement, Plaintiffs offer evidence that Mascarenas and Trujillo were fellow officers from the same small office in Taos, New Mexico. Like the specific facts alleged in Tonkovich, the fact that Officers Mascarenas and Trujillo worked together is insufficient to support a claim of conspiracy.

Even if Plaintiff had sufficiently shown an agreement and concerted action between Trujillo and Mascarenas, Plaintiffs' conspiracy claim under 42 U.S.C. § 1983 would fail because Plaintiff has failed to show an underlying actual violation of his constitutional rights. Thus, Defendants are entitled to judgment on Plaintiffs' claim in Count II under 42 U.S.C. § 1983 against Trujillo and Mascarenas for conspiracy to violate Plaintiff Ernest Mondragon's civil rights.

    D.       Plaintiffs' Claims Under 42 U.S.C. § 1983 for Inadequate Training and Supervision

Both Counts I and II make allegations for supervisory liability.  Count I alleges that Defendant New Mexico State Police is liable to Plaintiffs for maintaining policies and customs that caused the violation of Plaintiffs' rights and for inadequate supervision and training.  Count II alleges that Defendants John Does are liable to Plaintiffs for the same reasons.  Defendants point out that there is no evidence that either Defendant Trujillo or Defendant Mascarenas are in supervisory positions.  Thus, the allegations of supervisory liability do not state claims against either of these Defendants.  The Court notes that the "New Mexico State Police" is not named as a Defendant in this action and that the claims against the individual defendants in their official capacities will be dismissed by stipulation of the parties.  Thus, the allegations of supervisory liability are directed only at John Does in the individual capacities.

Defendants then assert they are entitled to dismissal of these claims because Plaintiff cannot show an underlying constitutional violation.  Alternatively, even if Plaintiff can show a constitutional violation, Plaintiff cannot show the requisite deliberate indifference or that Defendants John Does were aware of prior conduct by Defendants Trujillo and Mascarenas such that their conduct toward Ernest was inevitable.

A supervisory officer may not be liable under 42 U.S.C. § 1983 for supervisory liability unless there has been an underlying constitutional violation.  <u>Apodaca v. Rio Arriba County Sheriff's Dept.</u>, 905 F.2d 1445, 1447 (10th Cir. 1990).  Because Plaintiffs have failed to show a violation of Ernest Mondragon's constitutional rights, the claim for supervisory liability must fail.

III.    <u>State Law Claims</u>

A federal district court has discretion to decline to exercise supplemental jurisdiction over state claims if it has dismissed the claims over which it has original jurisdiction.  28 U.S.C. §

14

1367(c)(3); Taylor v. Meacham, 82 F.3d 1556, 1564 n. 11 (10th Cir. 1996) (citing Panis v. Mission Hills Bank, N.A., 60 F.3d 1486 (10th Cir. 1995). Having dismissed all of Plaintiffs' claims brought under federal law, this Court declines to exercise supplemental jurisdiction over Plaintiffs' claims brought pursuant to state law or Defendant Mascarenas' counterclaim brought pursuant to state law. Accordingly, Plaintiffs' remaining claims and Mascarenas' counterclaim will be dismissed without prejudice.

III.    PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Because the Court will decline to exercise supplemental jurisdiction over Defendant Mascarenas' counterclaim, Plaintiffs' Motion for partial summary judgment on the counterclaim is moot.

**CONCLUSION**

IT IS THEREFORE ORDERED that Defendants' Motion to Strike Exhibits [Docket No. 77] is hereby GRANTED.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment [Docket No. 68] is hereby GRANTED IN PART and Plaintiffs' claims in Counts I and II are hereby DISMISSED WITH PREJUDICE for the reasons stated herein.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment [Docket No. 68] is hereby DENIED IN PART and Plaintiffs' claims in Count III, IV and V are hereby DISMISSED WITHOUT PREJUDICE as this Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims.

IT IS FINALLY ORDERED that Plaintiffs' Motion for Partial Summary Judgment [Docket No. 65] is hereby DENIED WITHOUT PREJUDICE and Defendant Mascarenas'

Counterclaim is DISMISSED WITHOUT PREJUDICE as this Court declines to exercise supplemental jurisdiction over Defendant Mascarenas' state law counterclaim.

_____
UNITED STATES DISTRICT JUDGE